UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAHAR ODISHO, as Personal
Representative of the Estate of
ANTHONY WARDIA,

               Plaintiff,

                                   Civil Case No. 21-11021
v.                               Honorable Linda V. Parker

YAHAYA YACOUBA,
BEST CARRIER, INC., and
TURBO TRUCK & AUTO SALES, INC.,

               Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT (ECF NOS. 16, 33) AND DENYING AS MOOT
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO
PROHIBIT PLAINTIFF FROM CALLING EXPERT WITNESSES (ECF
NO. 26)**

This is a negligence action arising from a fatal motor vehicle accident

involving pedestrian Anthony Wardia and a tractor-trailer driven by Yacouba

Yahaya, who is incorrectly named in the Complaint.  (*See* Yahaya Aff., ECF No.

33-4 at Pg ID 790, ¶¶ 3-4.)  Mr. Wardia's mother and the personal representative

of his estate, Sahar Odisho (hereafter "Plaintiff"), initiated the action in State court

against the following: (1) Mr. Yahaya; (2) Best Carrier, Inc., which owned the

tractor and engaged Yahaya as a contract driver; and (3) Turbo Truck & Auto

Sales, Inc. ("Turbo"), which owned the trailer.

The matter is presently before the Court on several motions:

- Turbo's Motion for Summary Judgment, filed September 13, 2021 (ECF No. 16);

- Defendants' Motion to Dismiss or, in the Alternative, to Prohibit Plaintiff from Calling Witnesses at Trial for Purposes of Giving Opinion Testimony, filed February 24, 2022 (ECF No. 26); and

- Yahaya and Best Carrier's Motion for Summary Judgment, which is joined by Turbo, filed April 25, 2022 (ECF No. 33).

The motions are now fully briefed.[1]  (ECF Nos. 25, 27, 28, 30, 34, 35.)  Finding the facts and legal arguments adequately presented in the parties' submissions, the Court is dispensing with oral argument with respect to the motions pursuant to Eastern District of Michigan Local Rule 7.1(h).  For the reasons that follow, the Court concludes that Defendants are entitled to summary judgment.  The Court is therefore denying as moot Defendants' motion to dismiss.

## I.   Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material

---

[1]  As of January 27, 2022, Plaintiff had not responded to Turbo's September 13, 2021 summary judgment motion.  The Court therefore issued an order requiring Plaintiff to show cause in writing by February 3 as to why Turbo's motion should not be granted.  (ECF No. 22.)  More than two weeks after the February 3 deadline, on February 15, Plaintiff filed a motion seeking to file a response.  (ECF No. 23.)  After the Court granted Plaintiff's motion (ECF No. 24), she filed her response brief (ECF No. 25).

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  The trial court is not required to construct a party's argument from the record or search out facts from the record supporting those arguments.  *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact"); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091 (1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]" *InterRoyal Corp.*, 889 F.2d at 111.

## II.    Factual and Procedural Background[2]

Mr. Yahaya is professional truck driver, who lives in North Carolina.

(Yahaya Dep. at 8, 15, ECF No. 25-2 at Pg ID 417, 419.)  On or before June 1,

2020, Best Carrier engaged Mr. Yahaya to drive a tractor trailer from Charlotte,

North Carolina to a Chrysler plant in Sterling Heights, Michigan.  (Vartanov Aff.

¶ 4, ECF No. 16-6 at Pg ID 281.)  The tractor was a 2015 Volvo tractor owned by

Best Carrier.  (Accident Report at 1, ECF No. 16-4 at Pg ID 275; Registration,

ECF No. 16-5 at Pg ID 278.)  The trailer was a 2012 Wabash trailer owned by

Turbo (Cert. of Title, ECF No. 16-7 at Pg ID 284), which is in the business of

selling and leasing tractors and parts (Company Info., ECF No. 16-10).

Mr. Yahaya departed North Carolina with the tractor trailer in the late

afternoon on June 1.  (Yahaya Dep. at 53, ECF No. 25-2 at Pg ID 429.)  Before

departing, Mr. Yahaya inspected the tractor trailer and completed an electronic

inspection form.  (*Id.* at 59-64, Pg ID 430-31.)  There is some conflict in Mr.

---

[2]  In her response to Mr. Yahaya and Best Carrier's summary judgment motion, Plaintiff's factual recitation contains not one citation to the record.  (*See* Resp. Br. at 1-2, ECF No. 34 at Pg ID 955-56.)  As indicated in the preceding section, Rule 56 provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion *by . . . citing to* particular parts of material in the record . . .." Fed. R. Civ. P. 56(c)(1) (emphasis added).  Despite having no obligation to do so, the Court has reviewed the record and finds no support for many of Plaintiff's factual assertions, some of which it will make note of while summarizing the relevant facts.

Yahaya's testimony as to whether he inspected certain brake lamps and the turn signals. (*Compare id.* at 61-64, Pg ID 431 (indicating that he checked the left and right turn signals and the brake lights) *with id.* at 67, Pg ID 432 (answering "Correct" to the question: "With respect to the turn signals and the brake lights, those are things, because you were by yourself, that you didn't inspect for prior to your departure, correct?").)

Mr. Yahaya arrived in Sterling Heights around 3:00 in the morning on June 2. (*Id.* at 54, Pg ID 429.) The dispatcher instructed Mr. Yahaya not to take the load to Chrysler before it was scheduled to arrive, which was around noon. (*Id.*) Mr. Yahaya drove to the Chrysler plant and saw that he could not enter the grounds and so he drove to a nearby Target store, which he had passed on the way, to park, pray, and sleep. (*Id.* at 56, 58, 102, Pg ID 429, 430, 441.)

When Mr. Yahaya first arrived at the Target, he parked along a wall. (*Id.* at 71, Pg ID 433.) Thinking that he might impede traffic once the store opened, Mr. Yahaya subsequently moved the tractor trailer to the loading dock area. (*Id.* at 71-73, 90, 102, 105-06, Pg ID 433-34, 438, 441-42.) Mr. Yahaya backed the tractor trailer into a spot in the loading dock area, although he had to pull forward and backward numerous times to successfully do so. (*Id.* at 72-73, Pg ID 433-34.) Mr.

Yahaya did not see any signs prohibiting trucks or trespassing in the area where he parked.[3]  (*Id.*)  If he had, he would have gone elsewhere.  (*Id.* at 73, Pg ID 434.)

At around 4:30 a.m., Mr. Yahaya exited the tractor's cab to perform his ablution prior to praying.  (*Id.* at 84, Pg ID 436.)  Mr. Yahaya planned to sleep afterward.  (*Id.*)  After washing outside the truck, Mr. Yahaya returned to the cab, grabbed his prayer rug, and was putting it on the floor when he heard someone— later identified as Mr. Wardia—pounding on the driver's side door.  (*Id.* at 85, Pg ID 437; *see also* Police Narrative, ECF No. 33-9 at Pg ID 812.)

Aside from two individuals inside a vehicle that drove away minutes after Mr. Yahaya arrived at the Target, Mr. Yahaya noticed no one before Mr. Wardia appeared at his door.  (Yahaya Dep. at 89, 106, ECF No. 25-2 at Pg ID 438, 442.) According to one of Defendants' experts, who reviewed the Target surveillance video, Mr. Wardia is first seen running through the parking lot and toward the tractor trailer at 4:37:15.  (Yaek Report at 4, ECF No. 33-17 at Pg ID 906.)

---

[3]  Plaintiff asserts that Mr. Yahaya was illegally parked behind the Target store (Resp. Br. at 1, ECF No. 34 at Pg ID 955).  She offers no evidence to support that assertion, however.  While it is true that when shown a video of the Target parking lot during his deposition, Mr. Yahaya acknowledged seeing a sign that read "Unauthorized Vehicles Will be Towed."  (Yahaya Dep. at 110-11, ECF No. 25-2 at Pg ID 443.)  But Mr. Yahaya testified that the sign was in the area where customers park, not where he parked.  (*Id.* at 111, Pg ID 443.)

7

After Mr. Wardia pounded on the driver door, Mr. Yahaya cracked the window slightly and asked who he was and if he was a security guard.  (Yahaya Dep. at 108, ECF No. 25-2 at Pg ID 442.)  Mr. Wardia, who was standing on the ground next to the tractor trailer, said "Open the door, open the door, I'm going with you, I'm coming in, open the door."[4]  (*Id.* at 85, 108, Pg ID 437, 442.)  Mr. Yahaya told Mr. Wardia to "get away" from him.  (*Id.*)

Seeing something dark in Mr. Wardia's hand and not knowing what it was, Mr. Yahaya acted like he was going back to the bunker to get away from Mr. Wardia.  (*Id.*)  But because he was scared and the truck was still running, Mr. Yahaya decided to drive away.  (*Id.* at 79, 85, 108-09, Pg ID 436-37, 442-43;

---

[4]  Plaintiff asserts that Mr. Wardia and Mr. Yahaya engaged in "a lengthy discussion," at which time Mr. Wardia "asked Defendant Yahaya for a ride." (Resp. Br. at 1, ECF No. 34 at Pg ID 955.)  But the record does not support this. Mr. Yahaya estimated that they spoke for "[m]aybe 30 seconds." (Yahaya Dep. at 94, ECF No. 25-2 at Pg ID 439.)  According to Defendants' expert's summary of the surveillance video, less than a minute and a half elapsed between the time Mr. Wardia is first seen walking in the Target parking lot and the time Mr. Yahaya drove the tractor trailer away.  (Yaek Report at 10, ECF No. 33-17 at Pg ID 912.) Plaintiff's expert, Timothy Robbins, indicates in his report that "there is unknown communication/contact between Mr. Wardia and Mr. [Yahaya] [b]etween approximately 4:37:27 and 4:38:41 (*See* Robbins Report at 7, ECF No. 34-7 at Pg ID 1113.)  Yet Mr. Robbins indicates that "[t]his is off the view of the camera" (*id.*) and so it is unclear how he concluded the two were communicating during this period.  Additionally, there is no evidence that Mr. Wardia "asked" Defendant Yahaya for a ride.  The record only reflects that Mr. Wardia demanded that he be let into the truck and that he was going with Mr. Yahaya.

8

Police Narrative, ECF No. 33-9 at Pg ID 812.)  Mr. Yahaya sat down in the driver's seat, put the truck in gear, and began to drive away.[5]  (Yahaya Dep. at 85, 94, ECF No. 25-2 at Pg ID 437, 439.)

Mr. Wardia ran after the truck.  (*Id.* at 85-86, Pg ID 437.)  As the truck began to gain speed, Mr. Wardia fell behind; however, when Mr. Yahaya slowed for a stop sign in the lot, Mr. Wardia caught up and it appeared to Mr. Yahaya that Mr. Wardia then jumped or dove between the tractor and trailer, in the area referred to as the "fifth wheel."[6]  (*Id.* at 86, Pg ID 437.)  The parties' accident reconstruction experts disagree as to whether Mr. Wardia jumped or dove between the tractor and trailer or successfully climbed onto the fifth wheel but then fell. (*See* Robbins Report at 29, ECF No. 34-7 at Pg ID 1134; Yaek Report at 13-20,

---

[5]  The tractor trailer slowly pulled away at approximately 4:38:41, about a minute and thirty seconds after Mr. Wardia was observed running through the parking lot toward the truck.  (Robbins Report at 6-7, ECF No. 34-7 at Pg ID 1112-13; Yaek Report at 10, ECF No. 33-17 at Pg ID 912.)

[6]  During his deposition, Mr. Yahaya testified that he did not know the speed at which he drove away.  (Yahaya Dep. at 92, ECF No. 25-2 at Pg ID 438.) Defendants' accident reconstruction expert, Jennifer Yaek, opines that the tractor trailer was travelling less than ten miles per hour before the accident.  (Yaek Report at 10, ECF No. 33-17 at Pg ID 912.)  While Plaintiff's expert, Timothy Robbins, believes Ms. Yaek's speed calculations "are inaccurate and incorrect" and he formed his opinion based on a speed of 10 m.p.h. (*see* Robbins Report at 24, 26, ECF No. 34-7 at Pg Id 1130, 1132), he fails to explain how he calculated that speed, if he in fact did.

ECF No. 33-17 at Pg ID 915-22.)  In any event, Mr. Yahaya was driving straight when this happened.  (*Id.* at 109, Pg ID 443; *see also* Police Report at 1, ECF No. 16-4 at Pg ID 275.)  Mr. Yahaya applied the brakes but the truck rolled a couple of feet before coming to a stop.  (Yahaya Dep. at 86, ECF No. 25-2 at Pg ID 437.)

Mr. Yahaya immediately called 911.  (*Id.* at 76, Pg ID 434)  According to the 911 dispatcher, Mr. Yahaya "was very frantic" and stated, "I think he died" and "he jumped on my truck, I think he died."  (Police Narrative, ECF No. 33-9 at Pg ID 812.)

In the meantime, sometime before Mr. Wardia approached Mr. Yahaya, officers from the Sterling Heights Police Department were dispatched to the intersection of Metropolitan Parkway and Park Place Drive, just east of the Target store, to investigate a third-party report that a Jeep Cherokee had crashed into a utility pole.  (Police Narrative, ECF No. 33-9 at Pg ID 812.)  The caller did not witness the accident.  (*Id.*)

The officers located the Jeep Cherokee but there was no one inside and it appeared to the officers that the driver had fled the scene.  (*Id.*)  The officers traced the vehicle to Mr. Wardia, who lived in an apartment complex less than a half mile northeast of the Target.  (*Id.*)  The officers went to Mr. Wardia's address and spoke with his stepfather, Jan Quaryo, who indicated that Mr. Wardia was not home and

that he did not know where Mr. Wardia was.  (*Id*.)  As the officers were speaking

with Mr. Quaryo (*see* Quaryo Dep. at 32, 34, ECF No. 34-4 at Pg ID 1075-76), the

911 dispatcher relayed the call received from Mr. Yahaya and the officers drove to

the Target (Police Narrative, ECF No. 33-9 at Pg ID 812.)

      When the officers arrived at the Target, they observed Mr. Wardia, who was

deceased, near the rear wheels on the driver's side of the tractor trailer.  (*Id*.; *see*

*also* Robbins Report at 17, ECF No. 34-7 at Pg ID 1123.)  One of the officers

spoke with Mr. Yahaya, who was "extremely frantic[,]" "extremely upset[,]" and

"having a hard time explaining what happened because he was so shooken [sic]

up."  (Police Narrative, ECF No. 33-9 at Pg ID 812.)  Eventually, Mr. Yahaya

described what happened.  (*Id*.)

      An officer thereafter transported Mr. Yahaya, with his consent, to a nearby

hospital for a blood draw which was negative for alcohol and drugs.  (*Id*.; Manzella

Dep. at 33, ECF No. 33-13 at Pg ID 845.)  A blood sample from Mr. Wardia

detected 7.4 ng/ml of Delta-9 TCH, and a urine sample was "presump[tively]

pos[itive] for cannabinoids.  (Autopsy Report at 2, ECF No. 34-6 at Pg ID 1004.)

Citing to the "autopsy report," Defendants assert that "a variety of substances"

were in [Mr.] Wardia's system."  (*See* Br. in Supp. of Mot. at 4-5, ECF No. 33 at

Pg ID 754-55 (citing ECF No. 33-10).)  Relying on the same "report," one of

Defendants' experts, Herbert Malinoff, M.D., writes that "[t]oxicology reports identified in the[] records are positive for cannabinoids, as well as multiple other psychoactive/controlled substances" and that some of the levels detected "are fairly substantial, including levels of methadone, cannabinoid, benzodiazepines, fentanyl, as well as phencyclidine." (Malinoff Report at 1-3, ECF No. 33-11 at Pg ID 817-19.)

However, the exhibit identified by Defendants and presumably relied upon by Dr. Malinoff is not the actual autopsy report but one page of an unidentified 82-page report, on which the medical examiner's findings are purportedly conveyed. The actual autopsy report lists the various drugs and the specified levels included on the unidentified report but only to convey the compounds searched for and the level at which they would be detected. (Autopsy Report at 41-42, ECF No. 34-6 at Pg ID 1105.) According to the autopsy report, these substances were *not* detected in Mr. Wardia's urine or blood sample.[7] (*Id*. at 11, Pg ID 1103 (listing positive findings).)

---

[7] As Dr. Malinoff's expert opinion is based on incorrect facts—i.e., that Mr. Wardia tested positive for numerous controlled substances—his opinion is not reliable. The outcome of Defendants' summary judgment motion, however, is not dependent on that opinion.

Almost two weeks after the accident, on June 15, the Michigan State Police inspected the tractor trailer and noted several violations with respect to the tractor (i.e., a crack on the passenger side of the windshield; three axles out-of-adjustment; and "CMV manufactured after 10/19/94 has an automatic airbrake adjustment system fails to compensate for wear") and two violations with respect to the trailer (i.e., left and right brake lamp and left turn signal inoperable). (MSP Report, ECF No. 34-5 at Pg ID 1088.) Defendant's accident reconstruction expert, Jennifer L. Yaek, Ph.D., opines that none of these violations "adversely affect[ed] Mr. Yahaya's operation of the vehicle or play[ed] any role in the subject incident." (Yaek Report at 11, 20, ECF No. 33-17 at Pg ID 913, 922.) Plaintiff's accident reconstruction expert, Timothy P. Robbins, does not conclude differently. (*See* Robbins Report, ECF No. 34-7.)

On April 1, 2021, Plaintiff filed this lawsuit against Defendants in the Circuit Court for Macomb County, Michigan. (Compl., ECF No. 1 at Pg ID 7-54.) In her Complaint, Plaintiff alleges the following claims: (I) negligence against Mr. Yahaya; (II) owner's liability pursuant to Michigan Compiled Laws § 257.401 against Best Carrier; (III) negligent hiring, retention, and supervision against Best Carrier; (IV) owner's liability pursuant to § 257.401 against Turbo; and (V) negligent hiring, retention, and supervision against Turbo. (*Id.*) On May 5, 2021,

13

Defendants removed the action to federal court on the basis of diversity jurisdiction.  (Notice of Removal, ECF No. 1.)  Defendants subsequently filed the pending motions.

### III.   Applicable Law and Analysis

Turbo seeks summary judgment as Mr. Yahaya was not its agent and it was not the owner of the tractor he was driving, but only the lessor owner of the trailer which played no role in the subject accident.  Turbo also joins Mr. Yahaya and Best Carrier's summary judgment motion, in which they argue that there is no evidence of negligence by any defendant but, even if there is a question of fact concerning their negligence, Plaintiff is precluded from obtaining damages because Mr. Wardia was more than 50% at fault for the accident.

#### A.   Negligence Generally

Federal courts sitting in diversity apply the substantive law of the forum state.  *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).  To prove a claim of negligence under Michigan law, the plaintiff must show that: (1) "the defendant owed  a legal duty to the plaintiff," (2) "the defendant breached or violated the legal duty," (3) "the plaintiff suffered damages," and (4) "the breach was a proximate cause of the damages

suffered." *Id.* (quoting *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 177

(Mich. 1993)); *see also Case v. Consumer Power Co.*, 615 N.W.2d 17, 20 (Mich.

2000). "[T]o establish causation, a plaintiff must prove two elements: (1) cause in

fact and (2) proximate cause." *Rupert v. Daggett*, 695 F.3d 417, 425 (6th Cir.

2012) (citing *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. 1994)).

"The cause in fact element generally requires showing that 'but for' the

defendant's actions, the plaintiff's injury would not have occurred." *Id.* (quoting

*Skinner*, 516 N.W.2d at 479). The Michigan Supreme Court has explained

"proximate cause" as follows:

> Proximate causation involves examining the
> foreseeability of consequences and whether a defendant
> should be held legally responsible for such consequences
> given his negligent acts or omissions. This Court has
> defined proximate cause as "a foreseeable, natural, and
> probable cause." Such causation is distinct from factual
> or "but for" causation, and issues of proximate causation
> thus call for an independent, searching inquiry, the focus
> of which is whether the result of conduct that created a
> risk of harm and any intervening causes were
> foreseeable. Probability of harm is thus a relevant
> consideration to determine whether the defendant's
> conduct was foreseeable or if the defendant should be
> held legally liable in light of the circumstances. Since
> there are risks that can be foreseen but would not be
> avoided by a reasonable person, for liability to attach the
> harm must be of a kind that defendant should have
> avoided or it must be shown that defendant's actions
> presented an unreasonable risk of harm.

*Id.* at 425-26 (quoting *Jones v. Detroit Med. Ctr.*, 806 N.W.2d 304, 305 (Mich. 2011)).  "If an intervening force is not reasonably foreseeable under an objective standard, it constitutes a 'superseding cause' which relieves a prior negligent defendant from liability."  *Id.* at 426 (quoting *Ridley v. City of Detroit*, 590 N.W.2d 69, 73 (Mich. Ct. App. 1998), remanded on other grounds sub nom. *Ridley v. Collins*, 622 N.W.2d 65 (2000)).  "While an act of God or the *gross* negligence or intentional misconduct by the victim or a third party will generally be considered a superseding cause, *ordinary* negligence by the victim or a third party will not be regarded as a superseding cause because ordinary negligence is reasonably foreseeable."  *Id.* (quoting *People v. Schaefer*, 703 N.W.2d 774, 786 (Mich. 2005) (emphasis in original)).

## B.  Turbo's Liability

Plaintiff leaves unchallenged the evidence establishing that Mr. Yahaya was not Turbo's agent and that Turbo did not own the tractor.  (*See* Resp. Br., ECF No. 25.)  Plaintiff nevertheless argues that the trailer, which Turbo undisputedly owned, contained safety violations.  Plaintiff asserts that Turbo "was negligent by recommending and/or providing a defective trailer for use by [Yahaya and Best Carrier]."  (*Id.* at 1, Pg ID 407.)  Plaintiff further asserts that Mr. Yahaya failed to conduct the necessary pre-trip inspection of the tractor and, according to Mr.

16

Yahaya, the trailer would not have travelled to Michigan had he detected the safety violations.  (*Id.* at 2-3, Pg ID 408-09 (citing Yahaya Dep. at 68, ECF No. 25-2 at Pg ID 432).)  Plaintiff argues that, had the tractor trailer never left North Carolina, the subject accident would not have occurred.  (*Id.* at 2, Pg ID 408.)  There are several reasons why Plaintiff's arguments fail to demonstrate Turbo's liability

First, Plaintiff identifies no evidence to show that the trailer was defective when Turbo leased it to Best Carrier.  The record does not even reflect how long the trailer was in Best Carrier's possession before the accident.  Therefore, no reasonable juror could conclude that Turbo was negligent in "recommending" or "providing" the trailer to Best Carrier.  Second, Plaintiff offers no evidence to show that the trailer was defective when Mr. Yahaya took possession of it and left North Carolina.  Finally, the record does not establish that the safety violations noted by the Michigan State Police during an inspection *two weeks after the accident* existed when the accident occurred.

But even if the safety violations existed when Mr. Yahaya left North Carolina and when the accident occurred, and even if there is a genuine issue of material fact as to whether Mr. Yahaya conducted the necessary pre-trip inspection of the tractor trailer, there is no evidence that the trailer or any of the violations cited by the Michigan State Police played any role in the subject accident.

17

Plaintiff's expert does not identify the violations as a cause of the accident.  (*See* Robbins Report, ECF No. 34-7.)  And Defendants' expert opines that the violations "did not adversely affect Mr. Yahaya's operation of the vehicle or play any role in the subject incident."  (Yaek Report at 20, ECF No. 33-17 at Pg ID 922.)  Additionally, no reasonable juror could conclude that the accident was a foreseeable consequence of any alleged negligence by Turbo.  Nor was it a foreseeable consequence of Mr. Yahaya taking the tractor trailer from North Carolina to Michigan with its alleged safety violations.

For these reasons, the Court is granting summary judgment to Turbo.[8]

## B.  Liability of Mr. Yahaya and Best Carrier

In response to Defendants' summary judgment motion, Plaintiff argues that the accident would never have occurred if Mr. Yahaya had (1) performed the pre-trip inspection and therefore not travelled from North Carolina to Michigan in the tractor trailer, or (2) "simply remained safely parked in the Target parking lot." (Resp. Br. at 3, ECF No. 34 at Pg ID 945.)  The Court addressed Plaintiff's pre-inspection argument above.  As to Mr. Yahaya's decision to leave the Target

---

[8]  Even if Turbo is not entitled to summary judgment for the reasons discussed already, it would be entitled to summary judgment for the reasons discussed below.

parking lot, Plaintiff fails to show how that conduct was negligent.  Plaintiff also fails to show that Mr. Yahaya operated the truck in a negligent manner.

Plaintiff maintains that Mr. Yahaya "caus[ed] his vehicle to move, very fast, back and forth up to 4 times" to knock Mr. Wardia off of it, at which time he was run over.  (Resp. Br. at 1-2, ECF No. 34 at Pg ID 955-56.)  There is no evidence, however, that Mr. Wardia successfully boarded the tractor-trailer.  There also is no evidence that Mr. Yahaya moved the truck back and forth at any time after encountering Mr. Wardia or, more specifically, in an attempt to eject Mr. Wardia from the vehicle.

Neither party submitted the Target surveillance video as evidence.[9] Nevertheless, no one—including Plaintiff's expert who reviewed it (*see* Robbins Report at 6-11, ECF No. 34-7 at Pg ID 1112-17)—has suggested that such movement can be seen in the video at any time after Mr. Wardia approached the tractor trailer.  Apparently the video shows Mr. Yahaya pulling the tractor trailer forward and backward numerous times when parking it in the loading area (*see* Yahaya Dep. at 73, ECF No. 25-2 at Pg ID 434); however, this was before Mr.

---

[9]  Although the Court recognizes that the accident occurred just outside the view of the Target surveillance camera.  (Robbins Report at 10-11, 16, ECF No. 34-7 at Pg ID 1116-17, 1122.)

Wardia ever approached the truck (see Yaek Report at 10, ECF No. 33-17 at Pg ID 912).

Plaintiff obtained a video from the surveillance camera of a market located in the same plaza as the Target, which also was not submitted into evidence but was viewed by Mr. Wardia's stepfather, Mr. Quaryo.  (See Resp. Br. at 6, ECF No. 34 at Pg ID 948.)  During his deposition, Mr. Quaryo described what he saw in the video: "I saw the truck in the background.  He was in the Target parking place. And then he moved once, twice, three, four times, and then it stopped."[10]  (Quaryo Dep. at 39, ECF No. 34-4 at Pg ID 1077.)  According to Mr. Quaryo, "[t]he movement of the driver was showing clearly that he had somebody that he wanted to get off the truck."  (Quaryo Dep. at 39, ECF No. 34-4 at Pg ID 1077.)

There is no evidence, however, reflecting when these movements occurred or whether it was after Mr. Wardia approached the truck.  Mr. Quaryo did not see Mr. Wardia in the video, much less on the truck when Mr. Yahaya allegedly maneuvered the truck in the manner Mr. Quaryo described.  As previously mentioned, the Target surveillance video also showed Mr. Yahaya moving the

---

[10]  Plaintiff's expert, Timothy Robbins, also reviewed the video.  (Robbins Report at 2-3, ECF No. 34-7 at Pg ID 1108-09.)  Mr. Robbins did not discuss what he saw in the video in his report, however.  Presumably he would have done so if he witnessed what Mr. Quaryo saw and found it relevant.

tractor trailer back and forth numerous times; however, as Mr. Yahaya explained, this was when he was backing it into the loading area.

Thus, the Court is left with Mr. Yahaya's explanation of when and why he maneuvered the tractor trailer back and forth numerous times.  In other words, the only evidence in the record is that the tractor trailer was moved back and forth when Mr. Yahaya first parked in the loading area.  Plaintiff offers no evidence of timing from the surveillance video Mr. Quaryo observed and admittedly he did not see Wardia on the truck in that video.  Mr. Quaryo appears to be only speculating or guessing as to why Mr. Yayaha drove the vehicle in this manner.

For these reasons, Plaintiff fails to show that Mr. Yahaya or Best Carrier acted negligently.  But even if Plaintiff made this showing, a reasonable juror could only conclude based on the facts presented that Mr. Wardia was more than 50% at fault for the accident.

Michigan's No Fault Act provides that a person may be "subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."  Mich. Comp. Laws § 500.3135(1).  The statute further provides that "[d]amages shall be assessed on the basis of comparative fault, except that damages *must not be assessed* in favor

of a party who is *more than 50% at fault*."[11]  *Id*. § 500.3135(2)(b) (emphasis

added).  Like the question of whether the defendant was negligent, "the question of

a plaintiff's own negligence for failure to use due care for his [or her] own safety is

a jury question *unless* all reasonable minds could not differ . . .."  *Chivis v. Cass

Cnty. Public Transit*, No. 351519, 2021 WL 3817770, at *4 (Mich. Ct. App. Aug.

26, 2021) (quoting *Rodriguez v. Solar of Mich., Inc.*, 478 N.W.2d 914, 918 (Mich.

Ct. App. 1991)) (emphasis added).  Stated differently, a court may resolve the

comparative fault issue when "no reasonable juror could find that [the] defendant

was more at fault than the [plaintiff] in the accident."  *Huggins v. Scripter*, 669

N.W.2d 813 (Mich. 2003).  No reasonable juror could conclude that Mr. Wardia

was 50% or less at fault for the accident.

---

[11]  Defendants also rely on Michigan law providing that it "is an absolute defense
in an action for the death of an individual or for injury to a person or property that
the individual . . . had an impaired ability to function due to the influence of
intoxicating liquor or a controlled substance and, as a result of that impaired
ability, the individual was 50% or more the cause of the accident or event that
resulted in the death or injury."  Mich. Comp. Laws § 600.2955a.  Defendants'
expert opines that, due to the many substances in Mr. Wardia's system, as
purportedly found in  the autopsy report, he was impaired and, as a result, was 50%
or more the cause of the accident.  (*See* Malinoff Report at 3, ECF No. 33-11 at Pg
ID 819.)  As discussed earlier, however, the toxicology report was positive only for
cannabinoids.  As Defendants have not offered evidence regarding Mr. Wardia's
impairment consistent with the facts, the Court cannot conclude that § 600.2955a
provides an absolute defense in this action.

At around 4:30 a.m., while it was still dark, Mr. Wardia approached Mr.

Yahaya's truck in an empty parking lot.  Mr. Wardia then pounded on the driver

door and demanded that he be let inside and allowed to go with Mr. Yahaya.

Scared, Mr. Yahaya proceeded to drive away at a slow rate of speed.  Rather than

moving to a safe distance, Mr. Wardia chased after and alongside the tractor trailer

and then either dove in between the tractor and trailer, attempted to climb onto the

fifth wheel, or successfully boarded but then fell.  Mr. Wardia's behavior was

grossly negligent and he was significantly more at fault, if not completely at fault,

for the accident.  Plaintiff's own accident reconstruction expert, Timothy Robbins,

opines that the cause of Mr. Wardia's death was his falling from the tractor trailer,

down in front of the tires.  (Robbins Report at 18, 25, 28, ECF No. 34-7 at Pg ID

1124, 1131, 1134.)  As Mr. Robbins admits, Mr. Wardia was solely responsible for

getting himself on the fifth wheel.  (Robbins Dep. at 16, ECF No. 34-3 at Pg ID

1015.)  Plaintiff does not suggest—much less present evidence to show—that Mr.

Yahaya engaged in negligent behavior that caused Mr. Wardia to fall from that

position.

"A motor vehicle operator owes a duty to pedestrians to exercise due care."

*Lawrence v. Schauf*, No. 354872, 2022 WL 414265, at *2 (Mich. Ct. App. Feb. 10,

20220 (citing *Sweet v. Ringwelski*, 106 N.W.2d 742, 747 (Mich. 1961); *Poe v*

*Detroit*, 446 N.W.2d 523, 527 (Mich. Ct. App. 1989)).  "By the same token, however, a pedestrian 'must take such care for his own safety as a reasonable, careful, prudent person would do under similar circumstances.'"  *Id.* (quoting *Malone v Vining*, 21 N.W.2d 144, 147 (Mich. 1946)) (quotation marks and citation omitted).  Even Plaintiff's expert, Timothy Robbins, agreed that it is unsafe for a pedestrian to chase after a truck and climb or jump onto a moving vehicle. (Robbins Dep. at 12, 17-18, ECF No. 33-15 at Pg ID 888, 890-91.)

## IV.   Conclusion

For the reasons discussed, the Court holds that Defendants are entitled to summary judgment pursuant to Rule 56.  The Court, therefore, finds it unnecessary to decide whether Plaintiff's claims should be dismissed or whether Plaintiff should be precluded from calling her experts as witnesses pursuant to Rule 26.

Accordingly,

**IT IS ORDERED** that Defendants' motions for summary judgment (ECF Nos. 16, 33) are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, to Prohibit Plaintiff from Calling Witnesses at Trial for Purposes

of Giving Opinion Testimony (ECF No. 26) is **DENIED AS MOOT**.

    **IT IS SO ORDERED.**

s/ Linda V. Parker<br>
LINDA  V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: July 11, 2022

25